**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENCIO L. OMEGA, et al., | No. C 11-02621 JSW |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, DENYING AS MOOT MOTION TO STRIKE, AND CONTINUING CASE MANAGEMENT CONFERENCE** |
| v. | |
| WELLS FARGO & CO., et al., | |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion to Dismiss and the Motion to Strike filed by Wells Fargo Bank, N.A. ("Wells Fargo"), which contends it was erroneously sued as "Wells Fargo & Co." The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L. R. 7-1(b). The hearing scheduled for September 16, 2011 is VACATED, and the Motion to Dismiss is GRANTED and the Motion to Strike is DENIED AS MOOT.

## BACKGROUND

On December 5, 2007, Plaintiffs, Florencio L. Omega and Juanita T. Omega (the "Omegas"), obtained a loan from World Savings Bank, FSB for real property at 4825 Rose Way, Union City, California (the "Subject Property"). (*See* Notice of Removal, Ex. A, Complaint ("Compl.") ¶¶ 1, 5.) The Omegas initially made timely payments on their loan but experienced financial hardships. In May 2009, they contacted Wells Fargo to discuss the possibility of a loan modification. (*Id.* ¶¶ 7-8, 15-16.)

The Omegas allege that Wells Fargo did not respond until May 2010, when a representative of Wells Fargo advised the Omegas about the possibility of a loan modification under the Home Affordable Modification Program ("HAMP"). (*Id.* ¶ 17.) The Omegas applied for a HAMP modification and monitored their application, until Wells Fargo advised them, on August 4, 2010, that the application had been denied. (*Id.* ¶¶ 18-22.) The Omegas attempted, unsuccessfully, to appeal this decision. (*Id.* ¶¶ 23-27.)

In the interim, on October 15, 2009, the Omegas filed a Chapter 7 bankruptcy petition (the "Bankruptcy Proceeding"). (Request for Judicial Notice ("RJN"), Ex. G.) The Omegas listed Wachovia Mortgage, FSB as a creditor, but they did not include any claims against Wachovia or Wells Fargo on their schedules. (*Id.*, Exs. G.) The Omegas received a discharge from the Bankruptcy Proceedings on January 20, 2010. (*Id.*, Ex. H.)

On January 19, 2011, the Omegas were served with a Notice of Default. (Compl.. ¶¶ 28-29.) Thereafter, the Omegas again attempted, unsuccessfully, to obtain a loan modification under the HAMP program. The Omegas were served with a Notice of a Trustee Sale on or about April 25, 2011.

Based on these and other allegations, which the Court shall address as necessary, on May 13, 2011, the Omegas filed a complaint in the Superior Court of the State of California for the County of Alameda, in which they asserted claims for wrongful foreclosure, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, violations of California Business and Professions Code §§ 17200, *et. seq.* ("Section 17200"), and breach of contract.

On June 1, 2011, Wells Fargo removed the case to this Court and asserted that this Court has subject matter jurisdiction on the basis of the assertion of a federal question and on the basis of diversity of citizenship.[1]

---

[1] In their Complaint, the Omegas alleged Wells Fargo & Co. is the successor in interest of World Savings Bank, FSB by way of a merger with Wachovia Bank, FSB. (Compl. ¶ 2.) Wells Fargo, however, avers that it is the successor in interest to World Savings Bank, FSB. (*See* Notice of Removal at 4:4-5:24.) Wells Fargo avers that Wells Fargo & Company, is its parent corporation and that none of the allegations relate to Wells Fargo & Company. Thus, according to Wells Fargo, Wells Fargo & Company was

2

**ANALYSIS**

**A.     Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

---

fraudulently joined as a defendant. (*See* Notice of Removal at 5:9-13, 5:19-24.) The Omegas do not dispute that Wells Fargo is the proper party to be sued. As such, the Court is satisfied that it has jurisdiction over this action. However, the Omegas shall name the proper defendant in the amended complaint permitted by this Order.

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff must allege the circumstances constituting fraud with particularity. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (9th Cir. 1999); Fed. R. Civ. P. 9(b). However, the particularity requirements of Rule 9(b) must be read in harmony with the requirement to make out a "short and plain" statement of the claim. Fed. R. Civ. P. 8(a)(2). Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In addition, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotations and citations omitted).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, the Court may consider documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice, without converting a motion to dismiss into a motion for summary judgment. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

**B.     The Court Grants, in part, Wells Fargo's Request for Judicial Notice.**

Wells Fargo asks the Court to take judicial notice of several documents relating to the Omegas' loan and the foreclosure proceedings, including the Deed of Trust, the Notice of Default, the Substitution of Trustee, and the Notice of Trustee's sale. (Request for Judicial Notice ("RJN"), Exs. A, I-K.) It also requests that the Court take judicial notice of several

4

1   documents relating to Wells Fargo's acquisition of World Savings Bank, FSB. (*Id.*, Exs. B-F.)
2   The Omegas do not oppose the request, although they do contest the accuracy of the statements
3   set forth in the Declaration attached to the Notice of Default. Because these documents are
4   properly the subject of judicial notice, the Court grants Wells Fargo's request for judicial notice.
5   The Court notes for the record that it has not assumed the truth of the statements set forth in the
6   Declaration of compliance with California Civil Code § 2923.5.

7   Wells Fargo also asks the Court to take judicial notice of the Omega's petition for
8   bankruptcy and the order of discharge. (RJN, Exs. G-H.) Although the Court has not reached
9   the merits of Wells Fargo's argument on the impact of the Bankruptcy Proceedings on this
10  action, the documents are the proper subject of judicial notice. Accordingly, the request is
11  granted.

12  **C.     Wells Fargo's Motion is Granted in Part and Denied in Part.**

13  Wells Fargo moves to dismiss on the basis that: (1) each of the Omega's fail to state a
14  claim for relief; (2) each of the claims is preempted by the Home Owners Loan Act ("HOLA");
15  and (3) the Omegas are judicially estopped from asserting these claims.

16  **1.     The Court Dismisses the Claim for Breach of Contract**.

17  In their fifth claim for relief, the Omegas allege that they "are the intended third-party
18  beneficiaries of the contract between Wells Fargo and the federal government under the Service
19  Participation Agreement (hereinafter "SPA"), and the SPA states the intention of the HAMP
20  program would assist homeowners, such as the Plaintiffs, who are in default and be granted
21  modification to reduce payments." (Compl. ¶ 127.) Wells Fargo moves to dismiss this claim
22  on the basis that it is preempted by HOLA and on the basis that the Omegas are not intended
23  third party beneficiaries of the SPA. Because the Court finds the latter argument dispositive, it
24  does not reach the HOLA preemption issue.[2]

25  As many district courts in the Ninth Circuit have determined, individual borrowers do
26  not have standing to sue under the SPA because they are not intended third party beneficiaries

27  ─────────────────────
28      [2]     The Omegas argue that the claim is not categorically preempted by HOLA but offer no other argument to oppose Wells Fargo's motion to dismiss this claim.

5

of the SPA. For example, in *Hoffman v. Bank of America*, the court determined that borrower was "an incidental and not an intended beneficiary to the HAMP servicer's agreement." *Hoffman v. Bank of America*, 2010 WL 2635773, at *4 (N.D. Cal. June 30, 2010) (citing *Klamath v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) and distinguishing *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009)). *Hoffman* recognized the weight of authority concluding that a borrower does not have enforceable rights under the HAMP Servicer Participation Agreement, and the Court adopts the *Hoffman* court's reasoning to determine that the Omegas cannot state a claim based on alleged breaches of the SPA. *Id.* at *3-4. *See also Orcilla v. Bank of America, N.A.*, 2010 WL 5211507 (N.D. Cal. Dec. 16, 2010) (disagreeing with *Marques v. Wells Fargo Home Mortg.*, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010)).

Accordingly, the Court grants Wells Fargo's motion to dismiss the breach of contract claim, without leave to amend.

**2. The Court Dismisses the Claim for Wrongful Foreclosure/Negligence Per Se.**

Wells Fargo moves to dismiss the Omega's claim for wrongful foreclosure/negligence per se on the basis that it is preempted by HOLA and on the basis that the Omegas fail to allege facts sufficient to state a claim. The Court finds the preemption argument dispositive. "Through HOLA, Congress gave the Office of Thrift Supervision ('OTS') broad authority to issue regulations governing thrifts. ... As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2." *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). Section 560.2 reads, *inter alia*:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

6

1    12 C.F.R. § 560.2(a).[3]  Section 560.2(b) lists specific types of state laws that are preempted,

2    including

3         state laws that purport to impose requirements regarding:

4         ...

5         (4) The terms of credit, including ... the circumstances under which a loan
         may be called due and payable upon the passage of time or a specified event
6         external to the loan;

7         ...

8         (9) Disclosure and advertising, including laws requiring specific statements,
         information, or other content to be included in credit application forms, credit
9         solicitations, billing statements, credit contracts, or other credit-related
         documents and laws requiring creditors to supply copies of credit reports to
10        borrowers or applications; [and]

11        (10) Processing, origination, servicing, sale or purchase of, or investment or
         participation in mortgages[.]
12

13   12 C.F.R. § 560.2(b).  Section 560.2(c) sets forth certain types of state laws that are not

14   preempted "to the extent that they only incidentally affect the lending operations of Federal

15   savings associations or are otherwise consistent with the purposes of" Section 560.2(a),

16   including contract, commercial law and tort law. *Id.* § 560.2(c).

17       In *Silvas*, the Ninth Circuit set forth the analysis to follow in order to determine whether

18   a state law is preempted.  First, a court should determine whether the law is the type of law

19   listed in Section 560.2(b).  If it is, the analysis ends, and the law is preempted.  *See Silvas*, 514

20   F.3d at 1005 (quoting OTS Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)).  If the

21   law in question is not listed in Section 560.2(b), a court should determine whether the law

22   affects lending.  If the answer is yes, then, pursuant to Section 560.2(a), a presumption arises

23   that the law is preempted.  *Id.*  "This presumption can be reversed if the law can clearly be

24   shown to fit within the confines of paragraph (c)," which is to be interpreted narrowly and

25   doubts should be resolved in favor of preemption.  *Id.*

26

27

---

28       [3]    "Federal regulations have no less preemptive effect than federal statutes."
   *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

7

The wrongful foreclosure claim is premised upon a state law of general applicability, *i.e.* it does "not purport to directly regulate the conduct of mortgage lenders." *Munoz v. Financial Freedom Senior Funding Corp.*, 573 F. Supp. 2d 1275, 1280 (C.D. Cal. 2008) (citing, *inter alia*, *Silvas*, 514 F.3d at 1006). However, the Court could still conclude the claim is preempted if, as applied, the law falls within Section 560.2. *Id.* The gravamen of the Omega's wrongful foreclosure claim is that Wells Fargo was required to but failed to comply with the requirements of California Civil Code § 2923.5. (*See* Compl. ¶¶ 38-44.)

One California court of appeal has found that a claim for alleged violations of Section 2923.5 is not preempted, because it concluded that the remedy was limited to a postponement of the foreclosure sale. *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 226-232 (2010). However, courts within this and neighboring districts, both before and after *Mabry*, have concluded that claims based on violations of Section 2923.5 are preempted as applied, because such claims relate to the "processing, origination, servicing [or] sale of ... mortgages ..." and, thus, fall within 12 C.F.R. § 560.2(b)(10). *See, e.g., Wornum v. Aurora Loan Servs., Inc.,* 2011 WL 3516055, at *7-*8 (N.D. Cal. Aug. 11, 2011); *Taguinod v. World Savings Bank, FSB*, 755 F. Supp. 2d 1064, 1073-74 (C.D. Cal. 2010); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1032 (N.D. Cal. 2010); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2010) (*De Leon I*); *Giordano v. Wachovia Mortg., FSB,* 2010 WL 5148428, at *4-*5 (N.D. Cal. Dec. 14, 2010); *Ondinma v. Aurora Loan Servs., Inc.*, 2010 U.S. Dist. LEXIS 28347, at *22 (N.D. Cal. Mar. 23, 2010). The Court finds no basis to depart from these decisions, and it finds that the Omega's wrongful foreclosure claim is preempted to the extent it is premised on alleged violations of Section 2923.5.

The Omegas also base their wrongful foreclosure claim on the allegations regarding Wells Fargo's alleged failure to modify their loan and the allegations that Wells Fargo mislead them in this regard. Assuming such allegations would not be preempted, because they are premised on misrepresentations of material fact or a failure to disclose, the Court finds the claim must be dismissed because there are no allegations to show the Omegas have satisfied the tender rule. Under California law, in an action to set aside a trustee's sale, a plaintiff must

8

demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'" *Pantoja v. Countrywide Home Loan, Inc.*, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009) (quoting *Karlsen v. American Sav. & Loan Assn.*, 15 Cal. App. 3d 112, 117 (1971)); *see also Arnolds Mgmt. Corp. v. Eischen,* 158 Cal. App. 3d 575, 578 (1984) ("[A]n action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security.) "A plaintiff must (1) demonstrate a willingness to pay and (2) show the ability to pay." *Pantoja*, 640 F. Supp. 2d at 1184 (citing *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir.1987)).

Accordingly, the Court dismisses the claim for wrongful foreclosure. The Court shall grant the Omegas leave to amend this claim but only if they can, in good faith and in compliance with their obligations under Rule 11, allege facts showing their compliance or ability to comply with the tender rule.

In their opposition, the Omegas stated that they would also seek to amend their first cause of action to allege a claim for negligence. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991); *see also Resolution Trust Corp. v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir. 1994) (citing *Nymark*, 231 Cal. App. 3d at 1096). "Special circumstances arise when the lender 'actively participates in the financed enterprise beyond the domain of the usual money lender.'" *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1153 (E.D. Cal. 2010) (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)). Because the Court cannot say it would be futile to permit a claim for negligence, the Court shall grant the Omegas leave to amend, if they can in good faith allege facts showing that Wells Fargo exceeded its conventional role as a mere lender of money. In addition, such a claim cannot be based on allegations relating to non-compliance with Section 2923.5, because such a claim would be preempted.

**3. The Court Dismisses the Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

9

Wells Fargo moves to dismiss this claim on the basis that it is preempted by HOLA and on the basis that the Omegas fail to allege facts sufficient to state a claim. Applying the *Silva* analysis, a claim for breach of the implied covenant of good faith and fair dealing involves a law of general applicability. However, as with their claim for wrongful foreclosure, the Omegas premise this claim on the basis that Wells Fargo failed to comply with the requirements of Civil Code § 2923.5. (Compl. ¶¶61-64.) For the reasons set forth above, the Court concludes that the claim is preempted to the extent it rests on those allegations.

The Omegas also premise this claim on the allegations relating to Wells Fargo's alleged failure to provide them with a loan modification. (Compl. ¶¶ 65-80.) To the extent the claim is premised on these allegations, the Court concludes that it would not be preempted, because the claim would be premised on general contract principles. *See, e.g., DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376 at *5, *10 (N.D. Cal. Jan. 28, 2011) (hereinafter "*DeLeon II*") (citing *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 459, 555-57 (9th Cir. 2010) and *Gibson v. World Savings & Loan Ass'n*, 103 Cal. App. 4th 1291, 1303-04 (2002)). However, the Court concludes the claim must be dismissed because the Omegas fail to allege facts sufficient to state a claim.

"Every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Fortaleza v. PNC Financial Services Group, Inc.*, 642 F. Supp.2d 1012, 1021 (N.D.Cal. 2009) (quoting *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 798 (2008)). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Id.* at 1021-22 (citations omitted). The Omegas allege that the contract supporting their breach of the implied covenant claim is the loan agreement. (Compl. ¶ 61.) However, those loan documents do not require Wells Fargo to modify the terms of the Omegas' loan. It is well-established that "[t]he covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal. 4th 317, 349-350 (2000)).

10

1    Accordingly, the Court grants Wells Fargo's motion to dismiss this claim. However, the
2 Court cannot find that there are no facts that could support a claim for breach of the implied
3 covenant of good faith and fair dealing, and it grants the Omegas leave to amend. As with their
4 wrongful foreclosure claim, this claim cannot be premised on alleged failures to comply with
5 Section 2923.5.

6    **4.    The Court Dismisses the Claim for Fraudulent Misrepresentation.**

7    Wells Fargo also moves to dismiss the fraud claim on the basis that it is preempted by
8 HOLA, that the Omegas fail to plead the claim with specificity, and that the Omegas fail to
9 allege facts sufficient to state a fraud claim. The Court again begins its analysis with the
10 preemption issue. A claim for fraud involves a law of general applicability, but the Omegas'
11 claim is premised, in part, on alleged violations of Section 2923.5. Thus, for the reasons set
12 forth above, the Court concludes it is preempted to the extent it is premised on those allegations.
13 However, as with each of their claims, the Omegas rely on more than the alleged violation of
14 Section 2923.5 to support this claim. The Court concludes that although this claim is not
15 preempted in its entirety, the Omegas still fail to state a claim.

16    In order to state a claim for fraud, the Omegas must allege facts showing: (1) Wells
17 Fargo made a misrepresentation; (2) Wells Fargo knew that the representation was false; (3)
18 Wells Fargo intended to induce the Omegas to rely on the representation; (4) the Omegas
19 justifiably relied on the representation; and (5) suffered damage as a result. *See Kearns v. Ford*
20 *Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). As Wells Fargo notes, the Omegas' claim for
21 fraud is internally inconsistent, in that they allege that Wells Fargo did not tell them why their
22 request for a loan modification was denied and, at the same time, allege that Wells Fargo
23 advised them that the loan was denied because of the "NPV" and because they did not have
24 enough income. (*See* Compl. ¶¶ 84-85, 89, 94.)

25    The Omegas also allege that they "invested their limited resources in a continued
26 attempt to cooperate with Wells Fargo based on a promise that doing so would result in a loan
27 modification." (*Id.* ¶ 99.) However, the Omegas do not identify who made that promise nor do
28 they specify when and where it was made. Moreover, although the Omegas do specifically

11

1  recount various contacts with Wells Fargo personnel, none of those allegations contain a
2  specific promise regarding a loan modification. (*See, e.g., id.* ¶¶ 17-27, 88-94.) Thus the
3  Omegas have failed to satisfy the requirements of Rule 9 with respect to this aspect of their
4  fraud claim. The Omegas also fail to allege facts sufficient to show they relied on the alleged
5  promise to modify their loan.

6  Accordingly, the grants Wells Fargo's motion to dismiss the fraud claim and, because
7  the Court cannot conclude it would be a futile exercise, the Court grants the Omegas leave to
8  amend this claim. If the Omegas choose to amend this claim, it cannot be premised on alleged
9  violations of Section 2923.5, and the Omegas must satisfy the requirements of Rule 9.

10  The Omegas also ask that if the Court finds the fraud claim deficient, that they be
11  granted leave to amend to include a claim for promissory estoppel. In order to state a claim for
12  promissory estoppel, the Omegas must be able to allege facts showing that: (1) Wells Fargo
13  made a promise that was clear and unambiguous in its terms; (2) that the Omegas relied on that
14  promise; (3) that the Omegas' reliance on the promise was reasonable and foreseeable; and (4)
15  the Omegas were injured as a result of their reliance on the promise. *See Aceves v. U.S. Bank,*
16  *N.A.*, 192 Cal. App. 4th 218, 225 (2011). If the Omegas intend to assert this claim on the basis
17  that Wells Fargo allegedly promised to modify their loan or promised them that it would forbear
18  from exercising its right to foreclose on the Subject Property, the Omegas must be able to allege
19  facts showing that their promissory estoppel claim is not barred by the statute of frauds. *See,*
20  *e.g., Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 547 (2008) ("an
21  agreement by which a lender agreed to forbear from exercising the right of foreclosure under a
22  deed of trust securing an interest in real property comes within the statute of frauds").

23  **5.    The Court Dismisses the Claim for Violations of Section 17200.**

24  Wells Fargo also moves to dismiss the Section 17200 claim on the basis that it is
25  preempted by HOLA and on the basis that the Omegas fail to state a claim. The Court again
26  begins its analysis with the preemption issue. Section 17200 is a law of general applicability.
27  However, the Omegas' claim is premised, in part, on alleged violations of Section 2923.5.
28  Thus, for the reasons set forth above, the Court concludes it is preempted, in part. In addition,

12

1  to the extent this claim rests on Wells Fargo's alleged failure to modify their loan, for the
2  reasons set forth in the Court's analysis of the fraud claim, the Court concludes that this claim
3  should be dismissed.

4  Finally, the Omegas also premise this claim on allegations that at an unspecified time
5  between May 2009 and May 2010, an unidentified Wells Fargo employee told them that Wells
6  Fargo "could not assist them with any loan modification unless they were ninety (90) days late
7  on their payments. Doe One and Wells Fargo also promised Plaintiffs that they would also
8  offer such assistance after the 90-day delinquency." (Compl. ¶ 115.) The Omegas seem to
9  imply that these statements were false because they then allege that they relied on these
10 statements to their detriment and were damaged when Wells Fargo instituted foreclosure
11 proceedings. (*Id.* ¶¶ 115-117.) Although these allegations could state a claim under the unfair
12 prong, these allegations also sound in fraud and fail to satisfy Rule 9.

13 Accordingly, for each of these reasons, the Court grants Wells Fargo's motion to dismiss
14 the Section 17200 claim. Although the Court notes that it may be difficult for the Omegas to
15 allege that they lost money or property as a result of Wells Fargo's alleged conduct, the Court
16 cannot conclude it would be futile to grant the Omegas leave to amend this claim. *See DeLeon*
17 *II*, 2011 WL 311376, at *7 (dismissing claim under Section 17200 because the plaintiffs failed
18 to allege that they could have cured default and, thus, "facts allege suggest that the Plaintiffs
19 lost their home because they became unable to keep up with monthly payments and lacked the
20 financial resources to cure the default," rather than as a result of the defendant's conduct).

### 6. Bankruptcy Discharge.

22 Wells Fargo also moves to dismiss each of the Omegas' claims for relief on the basis
23 that they are judicially estopped from asserting these claims, because they did not include them
24 on their schedules as an asset in the Bankruptcy Proceedings. The Ninth Circuit has held that
25 "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know
26 that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend
27 his schedules or disclosure statements to identify the cause of action as a contingent asset." *See,*
28 *e.g., Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001). In the

1 *Hamilton* case, the facts demonstrated that the plaintiff's attorney had threatened the defendant
2 with litigation based on alleged bad faith and breach of contract before he filed for bankruptcy
3 and had failed to include the claims as a contingent asset in those proceedings. *Id.* at 781, 785.
4 Therefore, the court concluded he was judicially estopped from asserting those claims in a later
5 proceeding against the defendant.

6 Here, the Omegas filed for bankruptcy in October 2009, after they submitted their initial
7 application for a loan modification. The Omegas allege that Wells Fargo did not contact them
8 until May 2010, after they had received the discharge. Further, each of the specific
9 communications with Wells Fargo that are set forth in the Complaint occurred post-discharge.
10 Based on this record, the Court cannot conclude as a matter of law that the Omegas had
11 knowledge of enough facts to know that they had potential causes of action against Wells Fargo
12 while the Bankruptcy Proceeding was pending. Thus, to the extent Wells Fargo's motion rests
13 on this argument, it is denied. This ruling, however, is without prejudice to Wells Fargo
14 renewing the argument on a subsequent motion to dismiss or on summary judgment.

## CONCLUSION

16 For the foregoing reasons, Wells Fargo's motion to dismiss is granted in part and denied
17 in part. In light of this ruling, the motion to strike is denied as moot. The Omegas shall be
18 granted one further opportunity to amend all claims, except the breach of contract claim, or to
19 assert a claim for promissory estoppel or negligence on the terms set forth in this Order and in
20 compliance with their obligations under Rule 11. The Omegas shall file and serve their
21 amended complaint by no later than October 7, 2011, and Wells Fargo shall answer or
22 otherwise respond within the timer period permitted under the Federal Rules of Civil Procedure.

23 The case management conference scheduled for October 21, 2011 is CONTINUED to
24 December 9, 2011 at 1:30 p.m.

25 **IT IS SO ORDERED.**

26 Dated: September 14, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

14