1
2
3
4
5

**NOT FOR CITATION**

6

IN THE UNITED STATES DISTRICT COURT

7
8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

FLORENCIO L. OMEGA, et al.,                         No.  C 11-02621 JSW

10

        Plaintiffs,                              **ORDER DENYING MOTION TO REMAND AND DENYING APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

11

  v.

12

WELLS FARGO & CO., et al.,

13

        Defendants.
_____/

14
15

**INTRODUCTION**

16

      Now before the Court is the motion to remand filed by Plaintiffs Florencio L. Omega and

17

Juania T. Omega ("Plaintiffs") and their application for a temporary restraining order.  The Court

18

has considered the parties' papers, including the supplemental materials submitted following the

19

hearing, relevant legal authority, and the record in this case, and it has had the benefit of oral

20

argument.  The Court HEREBY DENIES the motion to remand and DENIES the application for a

21

temporary restraining order.

22

//

23

//

24

//

25

//

26

//

27

//

28

1

**BACKGROUND**[1]

**A.      Procedural History of this Litigation.**

On May 13, 2011, Plaintiffs, Florencio and Juanita Omega ("Plaintiffs"), filed the complaint in this action in the Superior Court of the State of California for the County of Alameda ("Alameda Superior Court") and asserted claims for: Wrongful Foreclosure; Breach of the Implied Covenant of Good Faith and Fair Dealing; Fraudulent Misrepresentation; Violations of California Business and Professions Code § 17200, *et seq.* ("Section 17200"); and Breach of Contract.  (Notice of Removal, Ex. A (Complaint).)

Plaintiffs listed "Wells Fargo & Co.," as the named defendant in the caption (hereinafter "the Company").  However, in the body of their Complaint, Plaintiffs alleged that "Wells Fargo & Co ... is and was the beneficiary by successor to Wachovia Bank, FSB who acquired the mortgage loan," on Plaintiffs' property "by successor of merger of the original lender World Savings Bank, FSB and has a principal place of business in the State of California."  (Compl., ¶ 2.)

On June 1, 2011, Wachovia Mortgage, a division of Wells Fargo Bank, N.A. (hereinafter "the Bank"), filed the Notice of Removal in this action.  In the Notice of Removal, the Bank alleged that the Company was fraudulently joined and alleged that it, rather than the Company, was the successor in interest to World Savings Bank FSB.  According to the Bank, it is the real party in interest and the proper defendant to be sued.  (*See* Notice of Removal at 1:26-27, 4:27-5:24.)  The Bank asserted that removal was proper on the basis of federal question jurisdiction and diversity jurisdiction.  (*Id.* at 2:9-6:28.)[2]

---

[1]      Plaintiffs challenge the propriety of removal.  To resolve that issue, the Court examines the facts at the time the case was removed.  Accordingly, the Court has set forth the allegations stated in Plaintiffs' Complaint.  *See Sparta Surg. Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).  The Court also includes allegations set forth in the First Amended Complaint for purposes to analyze whether Plaintiffs should be permitted leave to add the Company as a defendant and whether they are entitled to a temporary restraining order.

[2]      The Bank argued that the Court had federal question jurisdiction because Plaintiffs original breach of contract claim was based upon the fact that the Bank allegedly refused to comply with its obligations under the Home Affordable Modification Program

1    Plaintiffs did not move to remand or otherwise attack the Bank's decision to remove this

2    action.  On June 22, 2011, the Bank filed motions to dismiss and to strike.  (Docket Nos. 10-11.)

3    After this case was reassigned to the undersigned Judge, the Bank rescheduled the hearing date on

4    those motions.  Because Plaintiffs did not file responses, the Court issued an Order to Show Cause

5    directing Plaintiffs to show cause why the case should not be dismissed for failure to prosecute.

6    (Docket No. 20.)  Thereafter, Plaintiffs filed belated responses to the motions to dismiss, and the

7    Court discharged the Order to Show Cause.  (Docket Nos. 21-25.)  In their opposition briefs,

8    Plaintiffs did not claim that the Bank had improperly removed this action, did not dispute that it was

9    the proper defendant, and did not claim that the Court lacked subject matter jurisdiction over the

10   action.  (*See* Docket Nos. 21, 22.)

11        The Court resolved the Bank's motion to dismiss on the merits.  In its Order, the Court noted

12   that Plaintiffs had not disputed that the Bank, rather than the Company, was the proper party to be

13   sued, and stated that it was "satisfied that it has jurisdiction in this action."  (*See* Docket No. 31

14   (Order at 2 n.1).)  The Court permitted Plaintiffs to file an amended complaint, which they did on

15   _____

16   ("HAMP").  According to the Bank, because Plaintiffs argued the Bank breached its
     obligations under HAMP and alleged that Plaintiffs were third party beneficiaries to the
17   Bank's contract with the federal government, the breach of contract claim arose under the
     laws of the United States and raised a substantial federal question.  (*See, e.g.,* Notice of
18   Removal at 2:10-3:7.)

19        There appears to be a split of authority on this issue.  *See, e.g., Dean v. BAC Home
     Loans Servicing LLP*, 2012 WL 353766, at *2-*4 (M.D. Ala. Feb. 3, 2012) (finding no
20   federal question jurisdiction); *Boyle v. Wells Fargo Bank, N.A.*, 2012 WL 289881, at *2-*4
     (S.D. Tex. Jan. 31, 2012) (same); *Gretsch v. Vantium Capital, Inc.*, 2011 WL 6754079, at *2
21   (D. Minn. Dec. 23, 2011) (same, collecting cases); *but see, e.g., Larsen v. Bank of America,
     N.A.*, 2011 6065426, at *8-9 (D. Minn. July 21, 2011) (noting that "federal contract does not,
22   standing alone, create federal question jurisdiction," but finding that allegations in plaintiffs'
     complaint "placed the interpretation of the federal contracts ... squarely at issue," and issues
23   to be resolved raised "substantial questions of federal law with national implications);
     *Copeland-Turner v. Wells Fargo Bank, N.A.*, 2011 WL 996706 (D. Ore. March 17, 2011)
24   (finding federal question jurisdiction where plaintiffs alleged breach of federal contract).

25        Even the Bank met its burden to show federal question jurisdiction, Plaintiffs still
     contend it did not have the right to remove the action.  The Court rejects that argument, and
26   it is undisputed that the Bank is not a California citizen.  Thus, the Court need not, and does
     not, resolve the issue of whether it also had federal question jurisdiction at the time the case
27   was removed.

28                                    3

1    October 7, 2011.  (Docket No. 32.)  In their First Amended Complaint ("FAC"), Plaintiffs named

2    both the Bank and the Company as defendants.  Plaintiffs reasserted their claims for wrongful

3    foreclosure, breach of the implied covenant of good faith and fair dealing, fraudulent

4    misrepresentation, and violations of Section 17200.  (*Id.*)

5         The Bank subsequently moved to dismiss the FAC, and Plaintiffs again failed to file timely

6    opposition briefs.  Therefore, the Court issued a second Order to Show Cause directing Plaintiffs to

7    show cause why the case should not be dismissed for failure to prosecute.  (Docket Nos. 33, 34, 36,

8    38.)  In their response to the Order to Show Cause, Plaintiffs, for the first time, argued that the Bank

9    did not have standing to remove this action and, as a result, the Court lacked subject matter

10   jurisdiction.  (Docket No. 39.)

11        On December 2, 2011, the Court issued an Order in which it required Plaintiffs to file a

12   motion to remand.  (Docket No. 44.)[3]

13   **B.    Factual Background.**

14        The facts underlying this dispute are as follows.  On December 5, 2007, Plaintiffs obtained a

15   loan from World Savings Bank, FSB for real property at 4825 Rose Way, Union City, California

16   (the "Subject Property").  (Compl. ¶¶ 1, 5; FAC ¶¶ 1, 6; Request for Judicial Notice in Opposition to

17   Motion to Remand ("Remand RJN"), Ex. A.)[4]  Plaintiffs allege that in June 2008, World Savings

18   "was succeeded by merger to Wachovia Bank, FSB."  (Compl. ¶¶ 8-9; *see also* FAC ¶ 4, 6, 10.)  The

19

20        [3]    The Court also directed Plaintiffs' counsel to show cause why monetary sanctions should not be imposed.  The Court shall address that issue in a separate order.

21        [4]    The Bank asks the Court to take judicial notice of several documents relating

22   to Plaintiffs' loan and the foreclosure proceedings, including: the Deed of Trust, the Notice of Default, and a Substitution of Trustee.  (Remand RJN, Exs. A, G-H; *see also* Request for Judicial Notice in Opposition to Application for TRO ("TRO RJN"), Exs. A, G-J.)  The Bank

23   also requests that the Court take judicial notice of several documents relating to Wells Fargo's acquisition of World Savings Bank, FSB.  (Remand RJN, Exs. B-F, TRO RJN, Exs.

24   B-F.)  Plaintiffs have not opposed the requests.  These documents are referenced in, but not attached to, Plaintiffs' Complaint, and Plaintiffs do not contest their authenticity.  Under the

25   "incorporation by reference" doctrine, courts may consider documents that are "referenced extensively in the complaint and [are] accepted by all parties as authentic."  *See Van Buskirk*

26   *v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Because these documents are properly the subject of judicial notice, the Court GRANTS the Bank's requests to take

27   judicial notice of these documents.

28

record demonstrates that the Bank is the successor by merger to Wachovia Bank, FSB.  (*See* Remand RJN, Exs. B-F.)  In their FAC, Plaintiffs allege that the Company "is the owner, principal, parent company of" the Bank, and "[a]t all times mentioned herein ... directed, participated in, approved and benefitted from each of the acts allegedly conducted by the Bank." (FAC ¶ 2; *see also id.* ¶ 5 (alleging that "Wachovia in its capacity as a division of the Bank acted as an agent, at the direction and on behalf of" the Company), ¶ 11 (alleging that after the Company completed "its" merger with Wachovia, it continued Wachovia's existing mortgage operations).)

At first, Plaintiffs were able to make timely payments but later encountered financial difficulties and sought information about a loan modification.  (Compl. ¶¶ 7-8, 15-16; FAC ¶¶ 10-12.)  In February 2009, Plaintiffs submitted a loan application to Wachovia Mortgage, FSB. (Declaration of Michael Dolan in Opposition to Motion to Remand ("Dolan Decl."), ¶ 7, Ex. B.) That application was approved on or about March 3, 2009.  (*Id.*)  However:

> [i]n or about May of 2009, Plaintiffs encountered difficulty in making their loan payments and requested assistance from [the Bank] regarding loan modification options.  Soon thereafter, Plaintiffs obtained and submitted a loan modification application to [the Bank].  In response to this application, Doe One, who acted at all times herein as an agent or employee of [the Company and the Bank,] told Plaintiffs that neither [the Company nor the Bank] would work or negotiate with them regarding any loan modification unless they were ninety (90) days late on their payments.  Does One, [the Company, and the Bank] also promised Plaintiffs that they would work with Plaintiffs regarding modification of their loan after the 90-day delinquency.

(FAC ¶ 12, 22-25; *see also* Compl. ¶¶ 7-8, 16.)

Plaintiffs allege that, in reliance on this promise, they did not seek to refinance their loan and also decided not to try and sell their home.  (FAC ¶¶ 13, 22-25.)  Plaintiffs allege that they submitted an application for a loan modification and missed at least three months of their mortgage payments but between May 2009 and May 2010, "neither [the Company nor the Bank] offered or provided Plaintiffs with any information to help them qualify for their requested loan modification."  (*Id.* ¶ 14, 22-25; *see also* Compl. ¶ 17 (alleging that the Bank did not contact Plaintiffs until one year after they submitted loan application).)

Plaintiffs allege that between May 2009 until October 2010, they continued to try and

1    negotiate a loan modification with the Bank but were unsuccessful in their efforts.  (FAC ¶¶ 14-18;

2    Compl. ¶¶ 17-28.)  According to Plaintiffs, the Bank and the Company determined it was more

3    profitable to foreclose on Plaintiffs' home than to assist them with a loan modification.  (FAC ¶¶ 15-

4    19, 22-25, 29-32, 36-38, 42-45.)[5]

5         In the interim, on October 15, 2009, Plaintiffs filed a Chapter 7 bankruptcy petition (the

6    "Bankruptcy Proceeding").  (TRO RJN, Ex. K-M.)[6]  Plaintiffs listed Wachovia Mortgage, FSB as a

7    creditor, but they did not include any claims against Wachovia, the Company, or the Bank on their

8    schedules.  (*Id.*, Ex. M.)  Plaintiffs received a discharge from the Bankruptcy Proceedings on

9    January 20, 2010.  (*Id.*, Ex. L.)

10        On January 19, 2011, Ndex West, LLC served Plaintiffs with a Notice of Default.  Plaintiffs

11   allege that Ndex West was acting as an agent for "beneficiary Wells Fargo."  (Compl. ¶¶ 28-29;

12   FAC ¶ 19.)  According to the Notice of Default, Plaintiffs had been in default on their loan since

13   May 15, 2009.  (Remand RJN, Ex. G at 2.)  The Notice of Default provides that if Plaintiffs wanted

14   to obtain information about the amount they must pay or to make payment arrangements to stop

15   foreclosure, they should contact "Wells Fargo Bank, N.A. a/k/a Wachovia Mortgage, a Division of

16   Wells Fargo Bank, N.S. and f/k/a Wachovia Mortgage F.S.B."  (*See id.* at 2-3.)  That document

17   includes a declaration from the Bank regarding compliance with California Civil Code § 2923.5.

18   (*Id.*)

19        On January 13, 2012, Ndex West, LLC issued a Notice of Trustee's Sale, which was

20   recorded on January 18, 2012.  (TRO RJN, Ex. J.)  A sale was scheduled for February 9, 2012, but

21   the Bank has agreed to postpone that sale until on or after March 12, 2012, so that the Court may

22   resolve these motions.  (*See* Docket No. 67.)

23

24        [5]     In their FAC, Plaintiffs also allege that Defendants sold their home at a trustee
     sale.  It is evident from the record that no trustee sale has occurred.

25

26        [6]     Because these documents are court records and are relevant to whether
     Plaintiffs can establish a likelihood of success on the merits of their claims, and because
     Plaintiffs do not object, the Court GRANTS the Bank's request to take judicial notice of
27   these documents.

28                                            6

1    The Court shall address additional facts as necessary in the remainder of this Order.

2                                    **ANALYSIS**

3    **A.      Legal Standards Applicable to Removal Jurisdiction.**

4            "[A]ny civil action brought in a State court of which the district courts of the United States

5    have original jurisdiction, may be removed by the defendant or the defendants to the district court of

6    the United States for the district and division embracing the place where such action is pending."

7    *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (quoting 28 U.S.C. §

8    1441(a)) (emphasis added).  However, federal courts are courts of limited jurisdiction.  *See, e.g.,*

9    *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

10           An action originally filed in state court may be removed to federal court only if the district

11   court could have exercised jurisdiction over such action if initially filed there.  28 U.S.C. § 1441(a);

12   *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  A district court must remand the case if it

13   appears before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).

14   The burden of establishing federal jurisdiction for purposes of removal is on the party seeking

15   removal.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles,*

16   *Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Finally, a court must construe the removal statute strictly

17   and reject jurisdiction if there is any doubt regarding whether removal was proper.  *Duncan v.*

18   *Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Gaus*, 980 F.2d at 566 ("Federal jurisdiction

19   must be rejected if there is any doubt as to the right of removal in the first instance.")

20   **B.      The Court Denies Plaintiffs' Motion to Remand.**

21           **1.      The Bank Properly Removed the Action.**

22           Plaintiffs argue that the Bank could not remove this action, because it was not a defendant at

23   the time it filed the notice of removal.  Section 1441 provides that an action "may be removed by the

24   *defendant* or the *defendants*...."  28 U.S.C. § 1441(a) (emphasis added).  The Ninth Circuit has

25   concluded that this term is limited to named defendants.  *See McCarthy v. Western Constructors,*

26   *Inc. v. Phoenix Rental Corp.*, 951 F.2d 1137 (9th Cir. 1991), *superseded by statute on other*

27   *grounds*; *see also Huerta v. Citi Mortgage*, 2009 WL 1277768, at *1 (C.D. Cal. May 5, 2009).

28                                          7

In the *McCarthy* case, the Resolution Trust Corporation ("RTC") had removed the action from state court and concurrently moved in the district court to intervene in the proceedings. The RTC was not named in the state court complaint and it was not, by operation of law, the successor in interest to a financial institution that was a named party in those proceedings. The court also noted that the complaint was not amended to include the RTC as a party; nor had the RTC moved to intervene in the state court action before it removed the case to federal court. As such, the Ninth Circuit held that the district court lacked subject matter jurisdiction over the action. *Id.* at 1141-43.

In addition to *McCarthy*, Plaintiffs refer the Court to a number of cases from within neighboring districts and from outside this circuit which reach similar conclusions. *See, e.g., Sublett v. NDEx West,* 2001 WL 663745, at *1 (S.D. Cal. Feb. 14, 2011)[7]; *Gross v. Deberardinis,* 722 F. Supp. 2d 532, 534-35 (D. Del. 2010); *Juliano v. Citigroup*, 626 F. Supp. 2d 317 (E.D.N.Y. 2009); *Jana Master Fund, Ltd. v. J.P. Morgan Chase, Co.*, 490 F. Supp. 2d 325, 330-331 (S.D.N.Y. 2007); *see also Huerta*, 2009 WL 1277768, at *2. In each of these cases, it was clear that the entity that removed the action was not named as a party in either the caption or in the body of the complaint. That is not the case here.

The Ninth Circuit has held that "even if an improper defendant is indicated in the caption, we may consider a complaint to have named the proper defendant 'if the allegations made in the body of the complaint make it plain that the party is intended as a defendant.'" *Barsten v. Dep't of the Interior*, 896 F.2d 422, 423 (9th Cir. 1989) (quoting *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983)) (reversing district court's conclusion that it lacked subject matter jurisdiction over a claim under 29 U.S.C. § 794a on basis that plaintiff had improper defendant in caption where body of complaint made clear he attempted to and intended to sue proper

---

[7] This Court declines to follow *Sublett*. In that case, the court found that the Bank was not a named defendant and should have asked to be properly substituted in as a defendant before it removed the action. The court did not, however, address whether it was clear from the allegations in the complaint that the Bank was the intended defendant. Moreover, the *Sublett* court found, as an alternative basis for remand, that there were other non-diverse defendants in the suit. *See Sublett*, 2011 WL 663745 at *2. At the time this case was removed, there were no other defendants named in the complaint.

8

defendant); *see also Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1166-67 (N.D. Cal. 2003).

Plaintiffs defined the defendant named in the Complaint as "the beneficiary by successor of merger to Wachovia Bank, FSB who acquired the mortgage loan by successor of merger of the original lender World Savings Bank, FSB...."  (Compl. ¶ 2.)  The documents submitted by the Bank, of which the Court can take judicial notice, establish that it - rather than the Company - is the entity to which this definition applies.  (Remand RJN, Exs. B-F.)  All of the documents pertaining to Plaintiffs' loan identify the Bank as the party taking the actions about which Plaintiffs' complain.  In addition, the Bank has put forth evidence that it was the only party involved in making decisions relating to Plaintiffs' loan and that the individuals identified in Plaintiffs' original complaint were employees of the Bank, not the Company.  (Remand RJN, Exs. A,G, H; Dolan Decl., ¶¶ 2-3, 5-9.)

The Court is mindful of the fact that the removal statute is to be strictly construed.  However, in light of the allegations in the Complaint, which demonstrate that the Bank was the intended defendant, to accept Plaintiffs' argument that they "named" the Company would elevate form over substance.  Accordingly, the Court concludes that the Bank did have standing to remove the action, and it DENIES IN PART the motion to remand on this basis.  *Cf. Rendel v. National City Bank*, 2010 WL 1233480, at *2 (N.D. Cal. Mar. 26, 2010) (finding removal proper where entity that removed was, by operation of law, was successor in interest to named defendant).

Plaintiffs requested an award of attorneys' fees and costs incurred as a result of the allegedly improper removal.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c). Because the Court concludes the Bank did not improperly remove this case, the Court DENIES Plaintiffs' request for fees and costs under Section 1447(c).

**2.      The Court Denies Plaintiffs Leave to Join the Company as a Defendant.**

Although the Court finds that the Bank properly removed this case, this finding does not resolve the matter, because Plaintiffs, without express leave of court, included the Company, a non-diverse defendant in their FAC.  Pursuant to the removal statute, "[i]f after removal the plaintiff

seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e). "Congress added subsection (e) to [Section 1447] with the express purpose of taking advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity destroying defendant after removal."  *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion*, *SA de CV*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000).  That subsection of the removal statute "is couched in permissive terms and it clearly gives the district court discretion to deny joinder."  *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 691 (9th Cir. 1998).

In order to determine whether or not to permit Plaintiffs to add the Company as a defendant, the Court may consider the following factors: (1) whether the Company is required for just adjudication and would be joined under Fed. R. Civ. P. 19(a); (2) whether the statute of limitations would bar an action against the Company in state court; (3) whether the joinder is untimely, or there has been an unexplained delay in Plaintiffs' request; (4) whether joinder is intended solely to destroy diversity jurisdiction, (5) whether the claims against the Company appear valid; and (6) whether Plaintiffs would be prejudiced if the Court denies them leave to amend.  *See, e.g., Graunstadt v. USS-Posco Indus.,* 2010 WL 3910145, at * 2 (N.D. Cal. Oct. 5, 2010); *IBC*, 125 F. Supp. 2d at 1011).  "Any of the factors might prove decisive, and none is an absolutely necessary condition for joinder."  *Graunstadt*, 2010 WL 3910145, at &2.

Because the parties did not address these factors in their briefs, the Court required them to address them at the hearing on these motions.

### a.       Federal Rule of Civil Procedure 19(a).

Rule 19(a) governs the joinder of "required" parties, and requires joinder when complete relief is not possible without the absent party's presence; or (2) when the absent party claims a legally protected interest in the action such that (i) disposition of the action may "impair or impede" the person's ability to protect that interest or (ii) "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Fed. R. Civ. P. 19(a); *see also EEOC v. Peabody Western Coal Co.*, 400 F.3d

10

774, 779 (9th Cir. 2005). "[J]oinder under [Section] 1447(e) is ... more permissive than joinder under Rule 19. ... Courts permit joinder of non-diverse defendants under [S]ection 1447(e) where the proposed defendants are closely related to the cause of action or where their absence would prevent the grant of complete relief between the parties." *Graunstadt*, 2010 WL 3910145, at *2 (citing *IBC*, 125 F. Supp. 2d at 1012).

In the *Graundstadt* case, the plaintiffs wanted to add the employee of a company who allegedly made the fraudulent representations at issue. The court found that, because his employer could not be found liable without a finding that the employee made the representations, "[t]he factual nexus is so great, that denying joinder and forcing plaintiff to seek redress against [the employee] in state court would lead to redundant litigation and potentially inconsistent results and obligations." 2012 WL 3910145, at *3. Here, Plaintiffs allege that the Company had direct involvement in all of the conduct that forms the basis of their claims and also appear to proceed under the alternative theory that the Bank was acting as the Company's agent. Because the Company is alleged to be involved in all of the same conduct that forms the basis of the claims against the Bank, under Section 1447(e)'s permissive standard of joinder, if Plaintiffs had stated viable claims against the Company, this factor would weigh in favor of joinder. However, for the reasons discussed below, the Court finds that Plaintiffs have not stated potentially meritorious claims against the Company.

### b.	Statute of Limitations.

At the hearing, the Bank conceded that the statutes of limitations would not bar Plaintiffs from pursuing claims against the Company. Thus, this factor weighs against granting Plaintiffs leave to amend. *See, e.g., Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1083 (C.D. Cal. 1999).

### c.	Timeliness of Amendment.

The Court also considers whether Plaintiffs unduly delayed in seeking leave to add the Company. *See, e.g., Lopez v. Gen. Motors Corp.*, 697 F.2d 1328, 1332 (9th Cir. 1983). As is evidenced by the parties' briefing on the motion to remand, it is Plaintiffs' position that the Company was named at the outset of this litigation. They reiterate their view that the Company is

1    involved by including the Company as a defendant in the FAC.  The Bank removed this case in June

2    2011.  However, Plaintiffs failed to raise any question about this Court's jurisdiction and failed to

3    alert the Court to the fact that they believed the Company, rather than the Bank, was the proper

4    defendant until November 2011, when they filed their response to the Court's second order to show

5    cause.  Although the issue of subject matter jurisdiction can be raised at any time, Plaintiffs fail to

6    explain why they did not raise this issue at the outset.

7         Accordingly, the Court finds that this factor weighs against granting Plaintiffs leave to

8    amend.

9                    **d.    Plaintiffs' Motivation for Joinder.**

10        A further factor for the Court to consider is whether the Plaintiffs are seeking to add the

11   Company for the purpose of destroying diversity jurisdiction.  The Court has serious concerns about

12   Plaintiffs' purpose for joining the Company.[8]  A cursory inspection of the documents pertinent to

13   Plaintiffs' loan and the documents that have been filed in connection with foreclosure proceedings

14   would have revealed that the Bank was the entity taking the actions that give rise to Plaintiffs'

15   claims.  In addition, the Bank has submitted documents in other cases that tend to show Plaintiffs'

16   counsel was aware of this fact.  (Remand RJN, Exs. I-K.)[9]

17        The Court recognizes that "[s]uspicion of diversity destroying amendments is not as

18   important now that [Section] 1447(e) gives courts more flexibility in dealing with the addition of

19   such defendants."  *IBC*, 125 F. Supp. 2d at 1012.  However, on the facts of this case, the Court finds

20   that this factor weighs against granting Plaintiffs leave to amend.

21                    **e.    Validity of Claims.**

22        Courts favor joinder where a plaintiff states meritorious claims against a non-diverse

23   defendant.  *IBC*, 125 F. Supp. 2d at 1012.  Here, Plaintiffs assert claims for wrongful foreclosure,

24   _____

25        [8]      The Court suspects that Plaintiffs' actions in this case are driven by counsel.

26        [9]      Plaintiffs have not objected to the Bank's request to take judicial notice of
     these documents.  The Court GRANTS the request and takes judicial notice of the existence
27   of the existence of these pleadings.

28                                        12

breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, and violations of Section 17200. Plaintiffs argue that they sufficiently allege that the Company directly participated in the actions giving rise to their claims. If the record in this case consisted solely of the FAC, Plaintiffs' argument might have some force. However, the Bank submits the Dolan Declaration, in which Mr. Dolan avers that each of the individuals identified in Plaintiffs' Complaint were employees of the Bank. (Dolan Decl., ¶ 9.) Further, none of the documents referenced in the Complaint or the FAC reference the Company. Finally, Mr. Dolan has averred that the Company

> does not make decisions on the operations of [the Bank], including the reviewing and granting of loan modifications as well as decisions regarding commencing foreclosure proceedings. All authority for reviewing and granting loan modifications is exclusively vested in the Loss Mitigation Department of [the Bank]. [The Company] does not oversee the loan modification review process, nor does it offer any input. Furthermore, all authority for commencing foreclosure proceedings is exclusively vested in the Foreclosure and Bankruptcy Department. [The Company] does not oversee the foreclosure proceeding process for each individual loans [*sic*] and does not make any decision, provide any input, or oversee the foreclosure process for World Savings Bank, FSB originated loans.

(*Id.*, ¶ 5.)

Plaintiffs also argue that the Company could be held liable for the acts of its agent, the Bank. "It is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods,* 524 U.S. 51, 68 (1998). Under California law, a subsidiary may be deemed the agent of its parent corporation where the "parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parent acts, or nothing more than an incorporated department of the parent...." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541-42 (2003) (addressing agency relationship in context of personal jurisdiction). The Plaintiffs do not include any allegations in the FAC about the measure of control that the Company purportedly has over the Bank's actions in connection with the foreclosure process.

At the hearing, Plaintiffs argued that they could put forth evidence that was submitted to the court in *Tofighbakhsh v. Wells Fargo & Company*, 2010 WL 2486412 (N.D. Cal. June 16, 2010). In that case, the plaintiffs put forth evidence that certain officers of the Company were officers of the

13

1   Bank and were involved in the merger, including "the integration of Wachovia's mortgage

2   operations into the Wells Fargo Home Mortgage line of business." *Id.*, at \*2.  The evidence in that

3   case, however, did not pertain to foreclosure proceedings, and it would not appear to contradict Mr.

4   Dolan's declaration.  With the Court's permission, the Plaintiffs' submitted an offer of proof to the

5   Court of the additional facts and evidence that they claim would permit the Court to conclude they

6   have meritorious claims against the Company.  (*See* Docket No. 69.)  The Court has considered the

7   materials referenced by Plaintiffs but concludes that those materials would be insufficient to state

8   claims against the Company based on an agency theory of liability.

9          Accordingly, the Court also concludes that this factor weighs against joiner.[10]

10                    **f.      Prejudice.**

11         Finally, the Court considers whether Plaintiffs would be prejudiced if they are not permitted

12  to add the Company as a defendant.  Plaintiffs failed to articulate any reason why they would be

13  prejudiced if the Court did not permit them to include the Company as a Defendant.  Because the

14  Court concludes that Plaintiffs have not stated potentially meritorious claims against the Company,

15  it also finds that Plaintiffs will not be prejudiced by refusing them leave to join the Company as a

16  defendant.

17         The Court has considered each of the factors set forth above, and it finds that they weigh

18  against joinder.  Accordingly, the Court exercises its discretion to deny Plaintiffs leave to add the

19  Company as a Defendant and DENIES the motion to remand on this basis as well.  In light of this

20  ruling, the Court has diversity jurisdiction over this action, and it turns to Plaintiffs' application for a

21  temporary restraining order.

22  **E.     The Court Denies Plaintiffs' Application for a Temporary Restraining Order.**

23         **1.      Applicable Legal Standard.**

24         In order to obtain a temporary restraining order or a preliminary injunction, Plaintiffs "must

25  _____

26         [10]     Moreover, as discussed in Section E, *infra*, the Court finds that Plaintiffs have
    not established either a likelihood of success or serious questions going to the merits of their
27  claims against the Bank.

28                                             14

establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 376 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376-77 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

In *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), the Ninth Circuit held that the "serious questions" sliding scale approach survived *Winter*, whereby preliminary injunctive relief may be granted if a plaintiff demonstrates "that serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing district courts to preserve the status quo where difficult legal questions require more deliberate investigation. *See Sencion v. Saxon Mortg. Services, LLC*, 2011 WL 1364007 *2 (N.D. Cal. April 11, 2011). The plaintiff must also satisfy the irreparable harm and public interest requirements under *Winter*. *Alliance for The Wild Rockies*, 632 F.3d at 1132, 1135.

**2.       Serious Questions Going to the Merits.**

**a.       Wrongful Foreclosure.**

With respect to the wrongful foreclosure claim the Bank argues that Plaintiffs are not likely to succeed on the merits, because they do not allege they have complied with the tender rule. Under California law, in an action to set aside a trustee's sale, a plaintiff must demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'" *Pantoja v. Countrywide Home Loan, Inc.*, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009) (quoting *Karlsen v. American Sav. &*

1    *Loan Assn.*, 15 Cal. App. 3d 112, 117 (1971)); *see also Arnolds Mgmt. Corp. v. Eischen,* 158 Cal.

2    App. 3d 575, 578 (1984) ("[A]n action to set aside a trustee's sale for irregularities in sale notice or

3    procedure should be accompanied by an offer to pay the full amount of the debt for which the

4    property was security.) "A plaintiff must (1) demonstrate a willingness to pay and (2) show the

5    ability to pay." *Pantoja*, 640 F. Supp. 2d at 1184 (citing *In re Worcester*, 811 F.2d 1224, 1231 (9th

6    Cir.1987)). The Court previously granted the Bank's motion to dismiss the wrongful foreclosure

7    claim on this basis, and it granted Plaintiffs leave to amend "only if they can, in good faith and in

8    compliance with their obligations under Rule 11, allege facts showing their compliance or ability to

9    comply with the tender rule." (Docket No. 31 (Order at 9:9-12.) Plaintiffs do not include any

10   allegations that they have complied with or are able to comply with the tender rule, and fail to offer

11   the Court any authority that they should be excused from complying with this rule. Accordingly, the

12   Court finds they have not shown there are serious questions going to the merits of this claim.

13              **b.        Breach of the Implied Covenant of Good Faith and Fair Dealing.**

14          Plaintiffs also claim that the Bank breached the implied covenant of good faith and fair

15   dealing in its interactions with Plaintiffs. "There is implied in every contract a covenant by each

16   party not to do anything which will deprive the other parties thereto of the benefits of the contract."

17   *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960)). The covenant "exists merely to prevent one

18   contracting party from unfairly frustrating the other party's right to receive the benefits of the

19   agreement actually made." *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 349 (2000) (emphasis

20   omitted). However, in order "[t]o establish a breach of an implied covenant of good faith and fair

21   dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that

22   frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Financial Services*

23   *Group, Inc.,* 642 F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009) (citing, *inter alia*, *Racine & Laramie*

24   *v. Dep't of Parks & Rec.,* 11 Cal. App. 4th 1026, 1031 (1992)); *see also Smith v. City and County of*

25   *San Francisco,* 225 Cal. App. 3d 38, 49 (1990) ("Without a contractual relationship, [a plaintiff]

26   cannot state a cause of action for breach of the implied covenant.").

27          Here, Plaintiffs allege that they "had an oral agreement with [the Bank] ... under which" the

28

Bank "agreed to provide Plaintiffs with loan modification assistance and negotiations after Plaintiffs became 90-days delinquent on their mortgage." (FAC ¶ 29.) In essence, Plaintiffs allege that they had an oral agreement that the Bank would modify the terms of their loan. However, "[a] contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008). The court in the *Secrest* case also noted that "an agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds,, and "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Secrest*, 167 Cal. App. 4th at 547, 553. Because Plaintiffs have not alleged facts that demonstrate the existence of a valid contract, they have not shown that there are serious questions going to the merits of this claim.

### c.    Section 17200.

Plaintiffs' also claim that Defendants violated Section 17200. In its Order resolving the Bank's motion to dismiss the original complaint, the Court noted that might be difficult for Plaintiffs to allege that they lost money or property as a result of the Bank's alleged conduct, which is necessary for them to establish they have standing to bring this claim. Although the Court granted Plaintiffs leave to amend this claim, Plaintiffs have failed to allege any facts that would suggest that they could have cured their default. *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011) (dismissing claim under Section 17200 because the plaintiffs failed to allege that they could have cured default and, thus, "facts allege suggest that the Plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default," rather than as a result of the defendant's conduct).

Accordingly, the Court finds that Plaintiffs have not shown that there are serious questions going to the merits of this claim.

### d.    Fraudulent Misrepresentation.

Plaintiffs also claim that the Bank made material misrepresentations to them in their efforts

17

1   to obtain a loan modification.  The essential elements of Plaintiffs' claim for fraudulent

2   misrepresentation are: (1) the Bank made a misrepresentation; (2) Wells Fargo knew that the

3   representation was false; (3) the Bank intended to induce Plaintiffs to rely on the representation; (4)

4   Plaintiffs justifiably relied on the representation; and (5) suffered damage as a result.  *See Kearns v.*

5   *Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

6          The Bank argues that Plaintiffs failed to disclose this claim in the Bankruptcy Proceedings

7   and, therefore, are judicially estopped from asserting it now.[11]  Specifically, the Bank argues that

8   Plaintiffs' fraud claim rests on the premise that they were told, in May 2009, that they needed to

9   become delinquent on their loan for 90 days before Defendants would assist them with a loan

10  modification and that, after they complied with this directive, Defendants failed to keep their

11  promise.  According to the Bank, Plaintiffs would have had knowledge of enough facts to support

12  the instant claims for relief on the 91st day, or in August 2009, well before they commenced the

13  Bankruptcy Proceedings.  However, Plaintiffs also claim that the Bank either remained silent for a

14  large period of time or assured them that it would provide help.  Although the Court cannot say as a

15  matter of law that the Plaintiffs are judicially estopped from pursuing this claim, this argument

16  would appear to pose a substantial hurdle to Plaintiffs' ability to prevail on the claim.[12]

17         Accordingly, the Court finds that Plaintiffs have not shown there are serious questions going

18  to the merits of this claim either.[13]

19         **3.      Balance of Hardships.**

20         The Bank argues that the Court should deny Plaintiffs' request for a TRO, because they had

21  _____

22  [11]      The Bank raised this argument in connection with each of Plaintiffs' claims
    for relief.

23

24  [12]      Although the fraud claim may provide Plaintiffs their best hope of keeping
    this case alive, it does not provide them grounds for an injunction, because Plaintiffs have
    not shown that a legal remedy would be inadequate to remedy the alleged injuries.

25

26  [13]      The Bank also argues that Plaintiffs cannot prevail on this claim because they
    were provided with a loan modification, that agreement precedes the dates on which
    Plaintiffs claim the Bank made false representations to them about their request for a

27  *second* loan modification.  Therefore, the Court does not find this argument persuasive.

28                                          18

notice of the trustee's sale for three weeks and filed their *ex parte* application the day before the

trustee's sale, thus creating their own emergency.  "A delay in seeking a preliminary injunction is a

factor to be considered in weighing the propriety of relief."  *Lydo Enters., Inc. v. City of Las Vegas*,

745 F.2d 1211, 1213 (9th Cir. 1984) (citing *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*,

335 F. Supp. 278, 280 (S.D.N.Y. 1971)).  The Bank puts forth evidence that Plaintiffs' received

notice of the trustee's sale on or about January 18, 2012, did not contact counsel about whether the

sale would go forward until February 3, 2012, and did not get their application on file until the day

before the trustee's sale was scheduled.  (TRO RJN, Ex. J; Declaration of Melissa Coyle, ¶ 2.)  In

addition to their unexplained delay in filing the instant application, Plaintiffs, or as is more likely

their counsel, have demonstrated a pattern of less than diligent conduct throughout the litigation

before this Court, which has also resulted in a delay in these proceedings.

Counterbalanced against Plaintiffs' conduct is the Bank's argument that it is being "forced to

continue to hold a depreciating security interest, without any ability to stop or slow its ongoing

losses."  (Opp. Br. to TRO at 14:15-17.)  Wells Fargo puts forth no evidence to support this

argument.  In addition, if the Bank does continue to suffer monetary losses, those losses could be

recovered if this Court concludes that Plaintiffs' claims have no merit.

On balance, the Court concludes that this factor is neutral.

**4.     Irreparable Harm.**

Plaintiffs also must be able to show they would suffer irreparable harm.  "[F]oreclosure

under certain circumstances may constitute irreparable harm."  *Mandrigues v. World Savings, Inc.*,

2009 WL 160213 at *3 (N.D. Cal. Jan. 20, 2009) (citations omitted).  For example, a court has found

that a plaintiff made a showing of irreparable harm where the defendants intended to foreclose upon

his primary residence, his father was severely ill and resided with him, and where foreclosure would

eliminate his right to rescind the loan transaction.  *See Nichols v. Deutsche Bank Nat. Trust Co.*,

2007 WL 4181111 at *2 (S.D. Cal. Nov. 7, 2007) (citing *Sundance Land Corp. v. Comty First Fed.*

*Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988)).  In contrast, other courts have concluded that

a plaintiff could not show irreparable harm where the "record suggests that [the plaintiff] sought a

19

1   loan beyond her financial means and expectation of job loss," *Alcaraz v. Wachovia Mortgage FSB*,

2   2009 WL 30297 at *4 (E.D. Cal. Jan. 6, 2009), or where a plaintiff has not taken the opportunity to

3   mitigate the risk of foreclosure by accepting remedies offered by the lender. *See Parker v. U.S.*

4   *Dep't of Agriculture*, 879 F.2d 1362, 1367-68 (6th Cir. 1989).

5       In this case, it is undisputed that the Subject Property is Plaintiffs' primary residence. In

6   addition, Plaintiffs allege that they attempted to seek loan modifications. However, even after they

7   received the first loan modification, Plaintiffs were unable to make their payments. On these facts,

8   the Court concludes that Plaintiffs have not shown irreparable harm.

9       **5.    Public Interest.**

10      Finally, the Court recognizes the public interest of enforcing the Bank's secured property

11  interests against default, and in light of Plaintiffs' failure to meet their obligations after their first

12  request for a loan modification was granted, the Court finds that this factor weighs in favor of the

13  Bank.

14                          **CONCLUSION**

15      For the foregoing reasons, the Court DENIES Plaintiffs' motion to remand, and DENIES

16  Plaintiffs' application for a temporary restraining order. The Bank's motions to dismiss and to strike

17  the FAC have been pending since October 2001. It is HEREBY ORDERED that Plaintiffs'

18  opposition to those motions shall be due by no later than March 16, 2012, and the Bank's reply shall

19  be due by no later than March 23, 2012. The motions shall be set for a hearing on April 27, 2012. If

20  the Court finds the motions suitable for disposition without oral argument it shall notify the parties

21  in advance of the hearing date.

22      Plaintiffs are HEREBY ADVISED that if they fail to file an opposition brief by March 16,

23  2012, the Court shall deem the motion to dismiss unopposed.

24      **IT IS SO ORDERED.**

25  Dated: March 2, 2012

26                          JEFFREY S. WHITE
                            UNITED STATES DISTRICT JUDGE

27

28                                  20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21